IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CAROLYN ANDERSON,

       Plaintiff,

v.

FORT HAYS STATE UNIVERSITY,

       Defendant.

Case No. 20-1126-DDC

**MEMORANDUM AND ORDER**

Plaintiff Carolyn Anderson brings a Title VII sex discrimination suit against her former employer, defendant Fort Hays State University. Plaintiff alleges that defendant discriminated against her by hiring a less-qualified man for a tenure-track position and declining to renew her teaching contract. Defendant filed a Motion for Summary Judgment (Doc. 42).

The summary judgment record establishes the undisputed facts that defendant simply preferred the qualifications of a different applicant and plaintiff's beliefs—that she was more qualified for the job than the successful applicant—is purely a subjective view. In sum, she fails to adduce admissible evidence that could permit a reasonable factfinder to find defendant's preference for the other candidate is a pretext for discrimination. The court thus grants defendant's Motion for Summary Judgment (Doc. 42). The court explains this decision, below.

**I.    Factual Background**

Plaintiff is a 75-year-old woman. Doc. 44-1 at 1 (Pl.'s Interrog. Resp. 1(b)). She holds a bachelor's degree in business from the University of Indiana. *Id.* at 2 (Pl.'s Interrog. Resp. 1(f)). Plaintiff became a Certified Public Accountant (CPA) in 1984. Doc. 41 at 2 (Pretrial Order ¶

2.a.ii.). From 1978 to 1981, plaintiff worked for Midwest Commerce Bank, and she was the "first woman to do commercial lending in a regional market" for the bank. Doc. 44-1 at 2 (Pl.'s Interrog. Resp. 1(h)). Plaintiff also worked as a corporate controller and as regional director of a small business development center in Northern Indiana. *Id.* at 2–3 (Pl.'s Interrog. Resp. 1(h)). She earned an MBA in 1998. Doc. 41 at 2 (Pretrial Order ¶ 2.a.iii.). Plaintiff completed her Ph.D. requirements in February 2019. *Id.* (Pretrial Order ¶ 2.a.iv.).

Plaintiff began her career in academia in 2005. Doc. 44-1 at 3 (Pl.'s Interrog. Resp. 1(h)). She taught as an Adjunct Faculty Member at Indiana University, South Bend, then at Notre Dame University. *Id.* From 2011 to 2014, plaintiff worked at Friends University as an Assistant Professor and MBA Associate Program Director. *Id.* After Friends University eliminated its MBA program, plaintiff left for a position with this case's defendant—Fort Hays State University. *Id.*

In 2014, plaintiff began her employment with defendant as an accounting Instructor. Doc. 41 at 2 (Pretrial Order ¶ 2.a.i.). Defendant hired plaintiff on a temporary basis, on terms that lasted for one academic year at a time. Doc. 43-1 (2014–15 Contract); Doc. 43-2 (2015–16 Contract); Doc. 43-3 (2016–17 Contract); Doc. 43-4 (2017–18 Contract); Doc. 43-5 (2018–19 Contract). Defendant appointed plaintiff as an Instructor in its Department of Economics, Finance and Accounting for each academic year from 2014 through 2019. *Id.* Plaintiff signed an annual contract for each appointment. *See generally id.* All five agreements explained that plaintiff's "appointment carrie[d] with it no expectation of continu[ed] employment, no consideration for tenure," and that the "standards of non-reappointment" did not apply. *Id.* Defendant appointed plaintiff to teach 12 credit hours per semester, advise students, and perform research. *Id.* As an Instructor, plaintiff received positive feedback from her students. *See* Doc.

44-8 at 11–67.  Plaintiff's final contract, for the 2018–19 academic year, listed her salary as $69,124.  Doc. 43-5.

During the 2016–17 academic year, defendant conducted a job search for a new, tenure-track position:  Assistant Professor within the Economics, Finance, and Accounting Department.  Doc. 43-6 at 1.  Plaintiff and 25 others applied for this Assistant Professor position.  Doc. 43-7.  Defendant's search failed, and it didn't hire anyone.  *See id.*

During the 2018–19 academic year, defendant again searched for permanent accounting faculty.  Doc. 43-8 at 1.  Plaintiff again applied.  *See id.* at 2.  Defendant received a total of 19 applications.  *Id.* at 1.  Defendant pre-screened the 19 applicants for minimum qualifications, reducing the pool to 11 applicants.  *Id.*  Defendant remotely interviewed its top eight candidates: plaintiff and seven men.  Doc. 44-2 at 19 (Def.'s Interrog. Resp. 17); Doc. 44-3 (Def.'s Suppl. Interrog. Resp. 17).  Then, defendant invited the top four candidates to campus for in-person interviews—but plaintiff wasn't a top four candidate.  *See* Doc. 43-9; Doc. 43-10.  Ultimately, in June 2019, defendant hired a man for the position:  Gyebi Kwarteng.  Doc. 44-5 at 1.  Defendant paid Mr. Kwarteng $80,000 for the 2019–20 academic year.  *Id.* at 2.

Plaintiff argues she was more qualified for the tenure-track position than Mr. Kwarteng.  Mr. Kwarteng received his bachelor's degree in accounting in 2003.  Doc. 44-4 at 2.  He received a master's degree in accounting in 2004 and a master's degree in information technology in 2011.  *Id.*  And Mr. Kwarteng became a CPA in 2008.  *Id.* at 7.  Mr. Kwarteng's application for the position listed prior teaching experience as a Teaching Assistant from 2013–15 and a Study Table Tutor from 2003–04.  *Id.* at 4.  When defendant hired Mr. Kwarteng, he did not yet have his Ph.D, which he expected to complete in 2021.  *See* Doc. 44-5 at 1; *see also* Doc.

3

44-4 at 2.  Defendant offered Mr. Kwarteng the tenure-track position under the condition that he make consistent progress toward his Ph.D.  Doc. 44-5 at 1.

## II.     Legal Standard

Summary judgment is appropriate when the moving party demonstrates "no genuine dispute" about "any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the court applies this standard, it views the evidence and draws reasonable inferences in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  But the court "need not make unreasonable inferences or adopt one party's version of the facts if the record doesn't support it."  *Harte v. Bd. of Comm'rs*, 864 F.3d 1154, 1173 (10th Cir. 2017).  An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And, an issue of fact is "material" if it can "affect the outcome of the suit under the governing law[.]"  *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion[.]"  *Celotex Corp.*, 477 U.S. at 323.  A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  If the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation cleaned up).  To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (quotation cleaned up).  When deciding whether the parties have

4

shouldered their summary judgment burdens, the court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Summary judgment is not a "disfavored procedural shortcut[.]" *Celotex Corp.*, 477 U.S. at 327. Instead, summary judgment is an important procedure "designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1 (further citation omitted)).

**III.    Analysis**

Plaintiff relies on indirect evidence to establish that her claims merit a trial. The court thus applies the familiar burden shifting framework to her theory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This framework requires plaintiff, first, to establish a prima facie case. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). Second, assuming "plaintiff carries her burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action." *Id.* (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002)). Last, if defendant carries its burden at the second step of the framework, the burden shifts "back to the plaintiff to proffer evidence that the employer's reason is pretextual." *Id.* The court addresses each step of the framework, in turn, below.

**A.    Prima Facie Case**

Plaintiff argues that defendant discriminated against her when it declined to hire her for the tenure-track position and, as a result, declined to renew her teaching contract.[1] Plaintiff

---

[1] This case's Pretrial Order doesn't match plaintiff's claims on summary judgment. In the Pretrial Order, plaintiff "asserts that she is entitled to recovery solely on the theory that defendant *terminated* her employment and hired a less qualified male for her position[.]" Doc. 41 at 5 (Pretrial Order ¶ 4.a.) (emphasis added). But on summary judgment (and elsewhere in the Pretrial Order), plaintiff alleges that

frames defendant's actions as a failure to promote claim. Doc. 44 at 7–8. Our Circuit has articulated a specific prima facie case for failure to promote cases. *See Salemi v. Colo. Pub. Emps. Ret. Ass'n*, 747 F. App'x 675, 690 (10th Cir. 2018). In them, plaintiff must establish that: "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled." *Jones*, 349 F.3d at 1266.

The court assumes, without deciding, that plaintiff has satisfied her prima facie burden. It does so because even if plaintiff could make out a prima facie case, her claim cannot survive summary judgment because the undisputed facts present no triable issue whether defendant's decision not to hire plaintiff for the tenure-track position was pretextual.

### B.  Legitimate, Non-Discriminatory Reason

With the conclusion (or, as here, the assumption) that plaintiff could establish her prima facie case, the burden shifts to defendant. It must articulate a legitimate, non-retaliatory, non-discriminatory reason for declining to hire plaintiff for the tenure-track position and failing to renew her contract. At this second step of the *McDonnell Douglas* framework, defendant doesn't "'need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory

---

defendant declined to renew her teaching contract. *Id.* at 3 (Pretrial Order ¶ 3.a.); Doc. 44 at 4. Terminating an employment relationship and declining to renew an annual contract are different, but both qualify as adverse employment actions. Adding to the confusion, plaintiff's summary judgment brief appears to pursue a "failure to promote" theory. Doc. 44 at 7–8. And her opposition brief also argues that defendant violated Title VII when it "passed [her] over for the tenure track position and nonrenewed [her contract] due to her sex." *Id.* at 8. In this Order, the court utilizes the theories and facts advanced in plaintiff's response to the summary judgment motion. Namely, she argues that defendant declined to hire her for the tenure-track position, hired a less-qualified male instead, and then declined to renew her teaching contract. *See generally id.* And this Order utilizes the failure to promote prima facie case because, liberally construing plaintiff's claims, this theory best fits the claim presented in the summary judgment papers.

fashion.'" *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)). Instead, this "stage of the analysis only requires the defendant to articulate a reason for the [employment action] that is not, on its face, prohibited and that is reasonably specific and clear." *Id.* (quotation cleaned up).

Defendant easily carries that burden here. Defendant's legitimate, nondiscriminatory reason for declining to hire plaintiff for the permanent, tenure-track position is simple: defendant determined that plaintiff wasn't the best candidate for the position and other candidates were better qualified. This suffices at this second step of the analysis, so, the court moves on to pretext.

### C.   Pretext

At this third state of the framework, the burden shifts back to plaintiff, requiring her to establish a genuine issue of pretext. To carry this burden, plaintiff must provide evidence "that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination[.]" *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015) ("'Pretext can be inferred from evidence revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's explanation.'" (quoting *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quotation cleaned up))). At summary judgment, the court must decide whether a reasonable juror could find pretext under this standard. But the court doesn't ask "whether the employer's reasons were wise, fair or correct[.]" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007). Instead, the court asks, "whether the employer honestly believed its reasons and acted in good faith upon them." *Id.* at 1119.

7

The court thus considers "the facts as they appeared to the person making the decision," and doesn't "second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment." *Id.* "The reason for this rule is plain: [the court's] role is to prevent intentional discriminatory [employment] practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young*, 468 F.3d at 1250; *see also Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) ("'An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment.'" (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998))).

Plaintiff directs the court to three bundles of facts that, she contends, establish a triable issue of pretext. First, plaintiff argues she was an objectively superior candidate for the position than Mr. Kwarteng. Second, plaintiff points out that defendant paid Mr. Kwarteng more than it had paid her. And third, plaintiff relies on comments by her colleagues about defendant's decision to hire Mr. Kwarteng instead of her. The court addresses each bundle, below.

*First*, plaintiff argues she was "objectively" more qualified for the position than Mr. Kwarteng. Our Circuit has instructed it "'will draw an inference of pretext where the facts assure [the court] that the plaintiff is better qualified than the other candidates for the position.'" *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 602 (10th Cir. 2014) (quoting *Santana v. City and Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007)). But, a plaintiff can't show pretext by pointing to "'minor differences between plaintiff's qualifications and those of successful applicants[.]'" *Conroy v. Vilsack*, 707 F.3d 1163, 1172 (10th Cir. 2013) (quoting *Santana*, 488 F.3d at 865). Instead, to justify this inference, "there must be 'an overwhelming merit disparity.'" *Id.* (quoting *Santana*, 488 F.3d at 865); *see also Johnson v. Weld Cnty., Colo.*, 594

8

F.3d 1202, 1211 (10th Cir. 2010) ("[T]o suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications." (quotation cleaned up)).

Here, plaintiff argues she was more qualified than the successful candidate, Mr. Kwarteng, because: (1) she already had completed her Ph.D. and Mr. Kwarteng had not; (2) plaintiff has held a CPA license 24 years longer than Mr. Kwarteng; (3) plaintiff had more teaching experience than Mr. Kwarteng; and (4) plaintiff had more meaningful teaching experience than Mr. Kwarteng. These differences don't satisfy the legal standard adopted by our Circuit. For example, on similar facts, the Circuit affirmed a district court's grant of summary judgment because the female plaintiff had failed to present a triable issue on the overwhelming merit issue. *Hamilton*, 563 F. App'x at 602–03. In *Hamilton*, plaintiff sought a full time, tenure track position and already had served as a part time professor at the university and—like plaintiff here—she had completed her Ph.D. *Id.* The successful male applicant hadn't yet earned his Ph.D. and, like Mr. Kwarteng, hadn't worked for the university before. *Id.* at 603. The Circuit affirmed the district court's ruling that plaintiff hadn't adduced evidence capable of establishing an overwhelming disparity because the successful applicant's "qualifications [were] certainly not overwhelmingly inferior to [plaintiff's], and any difference between them [did] not come close to suggesting pretext." *Id.* (quotation cleaned up). Likewise, here, plaintiff fails to adduce evidence that Mr. Kwarteng held overwhelmingly inferior qualifications.

Indeed, the summary judgment record shows that defendant's hiring committee considered many different factors—beyond Ph.D. status, length of CPA license, and teaching experience—when it hired Mr. Kwarteng. Critically, the hiring committee largely agreed with

plaintiff about her superior qualifications in some areas and nonetheless declined to hire her. Specifically, the hiring committee gave plaintiff higher scores than Mr. Kwarteng in the Preferred Academic Degree and Preferred Teaching Experience categories. Doc. 43-9. But Mr. Kwarteng outscored plaintiff in the four other categories: Preferred Professional Experience, Preferred Professional Licenses, Demonstrated Passion for Teaching, and Quality of Application Materials. *Id.* Given these undisputed facts, plaintiff has failed to "come forward with facts showing an overwhelming disparity in qualifications." *Johnson*, 594 F.3d at 1211 (quotation cleaned up); *see also Conroy*, 707 F.3d at 1173–74 (affirming district court grant of summary judgment and concluding female plaintiff failed to show overwhelming merit disparity where plaintiff's technical skills made her more qualified in that regard but "she still fail[ed] to demonstrate that she was overwhelmingly more qualified than [the successful male applicant] *on the whole*, taking into account all of the factors that the [employer] found relevant").

Instead, plaintiff's argument that she was "objectively" more qualified than Mr. Kwarteng is merely her own speculation. "Plaintiff can't establish pretext with pure speculation." *Thomas v. Farmer's Ins. Exch.*, 448 F. Supp. 3d 1174, 1193 (D. Kan. 2020) (first citing *Lounds*, 812 F.3d at 1238; then citing *Webster v. Shulkin*, 707 F. App'x 535, 542 (10th Cir. 2017)), *aff'd*, 856 F. App'x 176 (10th Cir. 2021). Plaintiff's argument would require a factfinder to infer too much, *i.e.*, which professional licenses defendant preferred, how it evaluated a passion for teaching, how it reached its scores, etc. *See Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) ("[A]n inference is unreasonable if it requires a degree of speculation and conjecture that renders the factfinder's findings a guess or mere possibility." (quotation cleaned up)). Thus, plaintiff's arguments about her qualifications for the position fail to establish a triable issue of pretext.

10

*Second*, plaintiff argues she has shown pretext because defendant paid Mr. Kwarteng more than plaintiff for the same position. Indeed, Mr. Kwarteng's temporary contract for the 2019–20 school year is virtually identical to plaintiff's temporary contract for the 2018–19 school year, except Mr. Kwarteng's contract lists a salary of $80,000 and plaintiff's contract lists a salary of $69,124. *Compare* Doc. 44-5 at 2; *with* Doc. 43-5. But defendant maintains that the salary difference is based on the difference in the two positions held by plaintiff and Mr. Kwarteng: plaintiff held a temporary, one-year appointment and defendant hired Mr. Kwarteng for a permanent, tenure track position. Though defendant initially appointed Mr. Kwarteng to a temporary position like plaintiff's, Mr. Kwarteng's offer letter explains that his appointment "would move to tenure-track assistant professor" when he completed his Ph.D. Doc. 44-5 at 1. The record thus supports defendant's non-discriminatory explanation for the difference in pay, and the prevailing legal standard doesn't empower the court to question defendant's practice of appointing Mr. Kwarteng to a temporary position before moving him to the tenure track. *Young*, 468 F.3d at 1250. Plaintiff even acknowledges that defendant hired Mr. Kwarteng in a tenure track position.[2] *See* Doc. 44 at 8. Also, there's no evidence suggesting what defendant would have paid plaintiff had it hired her for the position. No reasonable juror could conclude, based on a pay disparity between different positions, that defendant's stated reason for declining to hire plaintiff was a pretext for discrimination.

*Third*, plaintiff argues that she has adduced evidence of pretext based on her colleagues' comments about defendant's decision not to hire her for the tenure track position. Defendant argues that these statements are inadmissible hearsay because plaintiff relays her colleagues'

---

[2]   Notably, plaintiff's discrimination claim is based, in large part, on a failure to promote theory, not a pay disparity theory.

11

comments in her own interrogatory responses. "It is well settled in this circuit that [the court] can consider only admissible evidence" at summary judgment. *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (quotation cleaned up). But the "nonmoving party need not produce evidence in a *form* that would be admissible at trial, but the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) (quotation cleaned up). The court recognizes that these comments may qualify for an exclusion to the hearsay rule, *i.e.*, the opposing party statement exclusion under Fed. R. Evid. 801(d)(2)(D) or plaintiff might offer the comments to prove something besides the truth of their assertions. *See, e.g.*, *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434–35 (10th Cir. 1993) (holding that statements about job applicants' bad conduct weren't hearsay because they weren't offered to prove the truth of the matter asserted but instead offered to establish the employer's state of mind when it decided not to hire applicants). Defendant raised this argument in its reply, so the court lacks the benefit of plaintiff's response to defendant's hearsay argument. But, even if defendant is wrong about the admissibility question, the comments fail to show a triable issue of pretext.

Two of plaintiff's colleagues, Sam Schreyer and Candace McCaffrey, told plaintiff they felt defendant's decision was discriminatory, helped plaintiff find legal counsel, and encouraged plaintiff to file an EEOC complaint. But comments by bystanders have no bearing on defendant's proffered reason for not hiring plaintiff. *Cf. McDonald v. Boeing Co.*, 602 F. App'x 452, 456 (10th Cir. 2015) (explaining that comments are insufficient to establish pretext unless comments are made by someone with influence over the employment decision). Mr. Schreyer and Ms. McCaffrey's comments simply don't "'reveal[] weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in'" defendant's explanation. *Lounds*, 812 F.3d at 1234 (quoting *Macon*, 743 F.3d at 714). These comments can't sustain a finding of pretext.

Plaintiff also relies on a single comment from Glenn Growe, a search committee member for the tenure-track position. Plaintiff asked Mr. Growe why the committee chose Mr. Kwarteng, and Mr. Growe said that they thought "he was a good man." Plaintiff characterizes this comment as an "unintentional admission" that the school wasn't looking for a woman. Doc. 44 at 10. But the record doesn't support plaintiff's characterization—defendant's hiring committee gave plaintiff relatively high ratings. The committee ranked plaintiff fifth out of the top eight applicants from a total pool of 19 applicants. *See* Doc. 43-8 at 1; Doc. 43-9; *see also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004) (agreeing with district court that plaintiff failed to establish pretext when committee member's alleged retaliatory comment did not prevent committee from giving plaintiff relatively high rankings). Indeed, defendant rated plaintiff higher than many men who, like plaintiff, applied unsuccessfully for the position. *See* Doc. 43-8; Doc. 43-9; Doc. 43-10. And, a single "comment, even if made by a decision maker, may not be 'sufficient to infer discriminatory intent.'" *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1141 (10th Cir. 2000) (quoting *McKnight*, 149 F.3d at 1129); *see also Kawahara v. Guaranty Bank & Tr.*, 835 F. App'x 386, 390 (10th Cir. 2020) ("[A]n isolated or ambiguous comment is insufficient alone to support an inference of discrimination."); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("[I]solated or ambiguous comments are too abstract to support a finding of . . . discrimination." (quotation cleaned up)). Nor did the comment refer directly to plaintiff. In sum, no reasonable jury could conclude from Mr. Growe's statement that defendant's stated reason for hiring Mr. Kwarteng—and not the plaintiff—was pretextual.

In sum, plaintiff has failed to adduce evidence from which a reasonable jury could find "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's explanation.'" *Lounds*, 812 F.3d at 1234 (quoting *Macon*, 743 F.3d at 714 (quotation cleaned up)).  Plaintiff thus fails to sustain her summary judgment burden on the pretext issue.

## IV.   Conclusion

Plaintiff has failed to identify a genuine issue of fact requiring a trial to resolve. Defendant has demonstrated that it is entitled to summary judgment on plaintiff's Title VII sex discrimination claim as a matter of law.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Fort Hays State University's Motion for Summary Judgment (Doc. 42) is granted.  Consistent with this Order, the court directs the Clerk to enter judgment against plaintiff and close this case.

**IT IS SO ORDERED.**

**Dated this 1st day of July, 2022, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**