FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

April 14, 2023

Christopher M. Wolpert
Clerk of Court

CAROLYN ANDERSON,

    Plaintiff - Appellant,

v.

FORT HAYS STATE UNIVERSITY,

    Defendant - Appellee.

No. 22-3141
(D.C. No. 6:20-CV-01126-DDC)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **PHILLIPS**, Circuit Judges.
_____

In this Title VII sex-discrimination case, Carolyn Anderson, Ph.D., appeals from a district court order that granted summary judgment to her former employer, Fort Hays State University (FHSU). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

### BACKGROUND

FHSU hired Dr. Anderson as a temporary accounting instructor on five occasions in its Department of Economics, Finance & Accounting, beginning in 2014. At the time,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

she had not yet obtained her Ph.D. Rather, she had a master's degree in business administration and experience teaching in academia and working as a certified public accountant ("C.P.A."). Her employment contract for the 2014-15 academic year provided a salary of $57,000 and specified that her "appointment carrie[d] with it no expectation of continuing employment, no consideration for tenure," and "the standards of non-reappointment [did not] apply." Aplt. App. at 86. Each of the contracts for the ensuing four academic years increased her salary, culminating in $69,124 for the 2018-19 academic year, and contained the same limitations on employment expectations. Her students gave her positive feedback and she pursued a Ph.D.

During the 2016-17 academic year, FHSU opened a tenure-track position for an assistant accounting professor in the department. Ms. Anderson and others applied, but FHSU did not select a candidate for the position.

During the 2018-19 academic year, FHSU again sought to fill that position. By February 2019, there were 19 applicants, including Ms. Anderson, who had recently obtained her Ph.D. in business administration, with a specialization in advanced accounting.

FHSU selected eight candidates for remote interviews. Dr. Anderson was in that group. FHSU ranked each of those candidates on a scale of zero to three in seven categories: academic degree; professional experience; professional licenses; teaching experience; passion for teaching; teaching effectiveness; and quality of application materials. FHSU then invited the four candidates with the highest scores for in-person interviews. Dr. Anderson was not in that group of candidates.

In March 2019, FHSU sent Dr. Anderson its annual notice reminding her that she was employed pursuant to a temporary appointment. The notice reiterated the provisions of her employment contracts that her employment would terminate at the end of the semester "and that there [was] no expectation of continuing employment." *Id.* at 25.

In May 2019, FHSU hired Gyebi Kwarteng for the tenure-track position. He had master's degrees in accountancy and information technology and was pursuing a Ph.D. in business. He had become a C.P.A. in 2008 and worked in a variety of accounting and finance positions. His teaching experience was limited to being a "[t]eaching [a]ssistant" and "[s]tudy [t]able [t]utor." *Id.* at 144.

Mr. Kwarteng's employment contract with FHSU, like Dr. Anderson's contracts, provided a temporary appointment and specified that it "carrie[d] with it no expectation of continuing employment, no consideration for tenure," and "the standards of non-reappointment [did not] apply." *Id.* at 165. But his salary for the 2019-20 academic year was set at $80,000 and FHSU stipulated that his "appointment would move to tenure-track assistant professor" when he acquired his Ph.D. *Id.* at 164.

"Because there was no longer a need for a temporary accounting instructor, [Dr. Anderson] was not offered a temporary appointment for the 2019-2020 academic year." *Id.* at 72. Dr. Anderson approached Glenn Growe, a faculty member involved in selecting Mr. Kwarteng, and was told that the selection committee[1] chose Mr. Kwarteng because they "thought he was a good man." *Id.* at 104.

---

[1] The record indicates there were six individuals on the committee, including at least two women. *See* Aplt. App. at 138.

Two other faculty members, neither of whom was on the selection committee, believed that Dr. Anderson should challenge FHSU's decision. Candace McCaffrey said that "these guys are very traditional," and Sam Schreyer said he "was not impressed with Mr. Kwarteng's resume." *Id.* at 104 (internal quotation marks omitted).

In 2020, Dr. Anderson sued FHSU, alleging it "subjected [her] to unlawful discrimination based on her sex in violation of Title VII . . . when [it] replaced her with a male who ha[d] less qualifications." *Id.* at 9.[2] FHSU moved for summary judgment.

The district court granted FHSU's motion. The court first determined that Dr. Anderson's Title VII claim was based on a failure-to-promote theory. The district court then ruled that even assuming she established a prima facie case, she failed to identify evidence that FHSU's reason for not selecting her for the tenure-track position (she was not the best candidate) was a pretext for discrimination.

Dr. Anderson now appeals.

---

[2] Dr. Anderson also pled a claim for age discrimination, which the district court dismissed. On appeal, she does not challenge that dismissal. It is therefore waived. *See Burke v. Regalado*, 935 F.3d 960, 995 (10th Cir. 2019) ("The failure to raise an issue in an opening brief waives that issue." (internal quotation marks omitted)).

# DISCUSSION
## I. Standards of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted).

## II. Sex Discrimination

"Title VII of the Civil Rights Act of 1964 prohibits, among other things, unlawful employment discrimination on the basis of an individual's sex." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "Where, as here, a Title VII plaintiff relies on indirect or circumstantial evidence to show discrimination, we examine the claim under the familiar burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006). Under that framework, a plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). In the context of a failure-to-promote claim,[3] the plaintiff must "demonstrat[e] that: (1) she was a member of a protected class; (2) she applied for and was qualified for the

---

[3] Dr. Anderson does not contest that she is asserting a failure-to-promote claim.

position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled." *Id.*

"If the plaintiff establishes a prima facie case, at the second step, the burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (internal quotation marks omitted). "If the employer makes this showing, at the final step, the burden shifts back to the plaintiff to demonstrate that the employer's explanations were pretextual—i.e., unworthy of belief." *Id.* (internal quotation marks omitted).

First, like the district court, we assume that Dr. Anderson has shown a prima facie case of discrimination.

Next, turning to the second step of the *McDonnell Douglas* framework, FHSU is not required "to litigate the merits of [its] reasoning" for not selecting Dr. Anderson for the tenure-track position and instead selecting Mr. Kwarteng. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (internal quotation marks omitted). Rather, it need only "articulate a reason . . . that is not, on its face, prohibited and that is reasonably specific and clear." *Id.* (internal quotation marks omitted). FHSU met this standard by asserting that Dr. Anderson was not the best candidate for the tenure-track position and that Mr. Kwarteng was a better candidate. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (accepting as legitimate nondiscriminatory reason for employer's hiring decision that plaintiff was less qualified than successful applicant); *accord Barnes v. Bd. of Trs.*, 946 F.3d 384, 389 (7th Cir.

6

2020) (observing that an employer's decision to hire an applicant believed to be the best candidate constitutes a legitimate, nondiscriminatory reason for an employment action). Indeed, FHSU's selection committee rated the top eight candidates in seven facially neutral categories and offered another round of interviews to the four highest scoring candidates—Dr. Anderson was not in that group but Mr. Kwarteng was. Thus, FHSU articulated a legitimate, nondiscriminatory reason for not giving Dr. Anderson the tenure-track position.

We proceed then to the final step of the *McDonnell Douglas* framework. "To show pretext, [Dr. Anderson] must establish that [FHSU's] proffered reason[] w[as] so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it] w[as] unworthy of belief." *Ford*, 45 F.4th at 1216 (internal quotation marks omitted).

Dr. Anderson argues that FHSU's reason for not giving her the tenure-track position is unbelievable because she was in fact more qualified than Mr. Kwarteng. She claims that her "real world experience . . . is far more impressive and diverse than that of Mr. Kwarteng" and that her academic credentials and teaching experience exceeded his. Aplt. Br. at 11. She points out that (1) she possessed a Ph.D., whereas he was two years away from obtaining his Ph.D., (2) she was a certified public accountant for 24 years longer than he was, and (3) his teaching experience was limited to being an assistant and a tutor, whereas she had been an adjunct faculty member and assistant professor at three universities before being hired as a temporary instructor at FHSU.

But it is not our role to decide whether Dr. Anderson or Mr. Kwarteng was the superior candidate. *See Johnson*, 594 F.3d at 1211 ("Under *McDonnell Douglas*, our role

7

isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reason[] it gave for its conduct and acted in good faith on those beliefs." (brackets and internal quotation marks omitted)). Accordingly, "to suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications." *Id.* (internal quotation marks omitted). Thus, Dr. Anderson must "demonstrate that she was overwhelmingly more qualified than [Mr. Kwarteng] *on the whole*, taking into account all of the factors that [FHSU] found relevant." *Conroy v. Vilsack*, 707 F.3d 1163, 1174 (10th Cir. 2013).

As recounted above, the FHSU selection committee ranked the eight candidates in seven categories. Although Mr. Kwarteng scored higher than Dr. Anderson overall, she actually garnered higher scores in regard to academic degree and teaching experience. *See* Aplt. App. at 99. Thus, the committee credited her superior qualifications in these categories.

Granted, Mr. Kwarteng scored higher in the category of professional experience despite Dr. Anderson having 24 years more experience as a C.P.A. But she offers no basis on which a rational factfinder could determine that her decades-long experience as a C.P.A. qualitatively overwhelms his ten or eleven years as a C.P.A. in regard to the tenure-track position. "[A]n employment discrimination plaintiff cannot survive summary judgment where the evidence [s]he produces permits nothing more than a speculative basis for believing discrimination was a motivating factor." *Markley v.*

8

*U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1083 (10th Cir. 2023); *see also Ford*, 45 F.4th at 1216 ("[M]ere conjecture that [an employer's reason] is pretextual cannot defeat summary judgment." (brackets and internal quotation marks omitted)).

Further, Dr. Anderson does not address the other categories in which Mr. Kwarteng outscored her: professional licenses, demonstrated passion for teaching, and quality of application materials.[4] "[W]e will infer pretext only when the plaintiff can *assure us* that [she] is better qualified than the other candidates for the position." *Ford*, 45 F.4th at 1219 (internal quotation marks omitted). Dr. Anderson's "own belief that she was the most qualified candidate for [the tenure-track] position is not enough to show pretext." *Id.*

Dr. Anderson next argues that pretext can be inferred from the fact that FHSU gave Mr. Kwarteng a $10,876 larger salary for the same instructor position that she occupied. But as FHSU noted, it hired Mr. Kwarteng with the expectation of elevating him from a temporary instructor to a "tenure-track assistant professor" when he obtained his Ph.D. Aplt. App. at 164. And Dr. Anderson identifies no evidence showing that FHSU would not have paid her the same salary as Mr. Kwarteng had she been the successful applicant. We conclude that the pay disparity is not evidence from which a rational factfinder could infer pretext.

Finally, Dr. Anderson argues that "pretext is . . . demonstrated by the reactions of [her] colleagues at [FHSU]." Aplt. Br. at 12. Although Mr. Schreyer and Ms. McCaffrey

---

[4] They tied regarding demonstrated teaching effectiveness.

9

were two FHSU faculty members who may have "expressed opinions about [FHSU's] action being discriminatory," *id.*, Dr. Anderson does not attempt to lay a foundation for their opinions. Specifically, there is no evidence that either individual had any involvement in FHSU's selection of Mr. Kwarteng or any knowledge of its reasons for selecting him instead of Dr. Anderson. In the absence of a foundation, their "views are mere conjecture and, thus, an insufficient basis on which to deny summary judgment," *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998) (internal quotation marks omitted); *see also Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177-78 (10th Cir. 2000) (stating that "[a] plaintiff cannot create a triable issue of fact [regarding pretext] by making an assertion without supporting facts," and concluding that employee's mere "opinion . . . is simply irrelevant").

As for Mr. Growe's statement that the committee chose Mr. Kwarteng because they "thought he was a good man," Aplt. App. at 104, no rational factfinder could construe that statement as an "admission . . . [that] the school was looking" to hire only a male, Aplt. Br. at 13. Indeed, when FHSU winnowed the pool of candidates from nineteen to eight, it placed Dr. Anderson in the group of eight candidates to be remotely interviewed. And when next determining which candidates to invite for on-campus interviews, the selection committee scored Dr. Anderson higher than three males. At most, Mr. Growe's statement "can only be speculatively attributed to discriminatory animus, and speculation will not suffice for evidence" of pretext. *Beaird*, 145 F.3d at 1170 (ellipsis and internal quotation marks omitted); *see also Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (stating that "isolated or

10

ambiguous comments are too abstract to support a finding of [sex] discrimination" (alterations and internal quotation marks omitted).

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Gregory A. Phillips
Circuit Judge
